UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| CECIL RAY WILLIAMSON, Jr.#86908 | ) | |
| | ) | |
| v. | ) | NO. 2:08-CV-15 |
| | ) | |
| TENNESSEE DEP'T OF CORR.; | ) | |
| MEDICAL DIR., Nashville; | ) | |
| NORTHEAST CORR. COMPLEX; | ) | |
| HOWARD CARLTON, Warden; | ) | |
| JESSE BAILEY; Capt., J. JONES, C/O; | ) | |
| M. TODD, C/O; DR. PAUL WILLIAMS; | ) | |
| JOHNSON CO. EMERGENCY ROOM; | ) | |
| DR. A. ATILYA, LOIS DEBERRY | ) | |
| SPECIAL NEEDS FACILITY; DR. S. | ) | |
| SALCEDO; DR. N. NWOZO; | ) | |
| D. SEEHORN; NASHVILLE GEN'L | ) | |
| HOSP; and DR. DAVID LIMBURD | ) | |

## **MEMORANDUM & ORDER**

Cecil Ray Williamson, Jr., a prisoner in the Northeast Correctional Complex in Johnson County, Tennessee, brings this *pro se* civil rights complaint under 42 U.S.C. § 1983, alleging claims for deliberate indifference to his serious medical needs, as well as claims under state tort law.

I. **Screening the Complaint**

The Court must now review the complaint to determine whether it states a claim entitling plaintiff to relief or is frivolous or malicious or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2) and §

1915A; *McGore v. Wrigglesworth*, 114 F.3d 601, 607 (6th Cir. 1997). If so, this suit must be dismissed.

## II. Plaintiff's Allegations

Plaintiff makes the assertions which follow. On January 20, 2007, plaintiff broke both of his arms playing handball. He was taken to the infirmary and thence, with a handcuff only on his left arm—the other cuff was left dangling—to the Johnson County Emergency Room, where he given x-rays and diagnosed as having fractures to both arms. After the staff physician administered pain medication and some substance, which numbed plaintiff's arms, the physician and the correctional officer in attendance violently pulled those appendages. Plaintiff received additional pain medication and x-rays, and he was returned to the prison infirmary with temporary splints on his arms and in leather restraints—not handcuffs.

Four days later, he was taken to an orthopedic clinic, where he received more x-rays and another evaluation. The orthopod determined that plaintiff needed "excursion rods" placed in his arms. This surgery was to be performed in three days. Plaintiff did not have the surgery at the orthopedic clinic but, instead, was taken to the Special Needs Facility in Nashville and given additional x-rays because his medical file contained no records regarding his previous medical treatment.

The next day, plaintiff was transported to General Hospital, where his

2

splints were removed, another set of splints were placed on his arms, and more x-rays were taken. Thereafter, he was returned to Special Needs, without a consultation with the doctor.

On February 5, 2007, sixteen days following plaintiff's accident, he was taken to General Hospital and diagnosed as needing titanium plates on the radius bones in both arms. The next day, presumably after the plates were installed, he was returned to Special Needs.

On February 13, 2007, plaintiff was taken back to General Hospital for stitch removal and casts. He noticed immediately that his arms "did not look right" and, when he went back to Special Needs, he began to feel pain from the misshapen bones. Eventually the pain ascended to his elbow and shoulder. Plaintiff complained to his medical care providers, but was told that he had to wait on the orthopedic surgeon to make a diagnosis, at the time the casts were taken off. Later, the casts were removed and, though plaintiff was informed that the x-rays showed that his broken bones looked good, in plaintiff's opinion, his "arms did not look right." When he questioned the orthopod about his arms, the doctor responded: "[W]e don't care what they look like, as long as they work right," and advised plaintiff that he would be able to do whatever he would be able to do.

Plaintiff informed a Special Needs physician and his assistant that his

3

arms were hurting and not healing properly and was told that his arms would never be the same and would have adhesions and atrophy. To no avail, plaintiff signed up on sick call every day until he was transferred back to NECX.

In the following months, plaintiff was sent to Special Needs several times for consultations, X-rays, and a six-month follow-up visit and was told that he might need to have his bones repositioned or some bone removed. As it now stands, plaintiff lives with chronic pain, limited mobility, limited strength and a limited range of motion in his arms, wrist and hands. He would have the Court order that, in keeping with his original diagnosis, excursion rods be surgically implanted in his arms and that the State be required to pay the costs of this procedure. Plaintiff also seeks compensatory and punitive damages from each defendant.

### III. Law & Analysis

Prison authorities who are deliberately indifferent to the serious medical needs of prisoners violate the Eighth Amendment rights of those prisoners. *Estelle v. Gamble*, 429 U.S. 97 (1976). An Eighth Amendment claim is composed of two parts: an objective component, which requires plaintiff to show a "sufficiently serious" deprivation, and a subjective component, which requires a showing of a sufficiently culpable state of mind —one of deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 834 and 842 (1994).

Deliberate indifference is illustrated by a prison official who acts or fails to act despite knowledge of a substantial risk of serious harm to an inmate under his care. *Id*. However, where a prisoner receives some medical care and the dispute is over its adequacy, no claim has been stated. *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). By the same token, no viable Eighth Amendment claim is stated by allegations that a medical condition has been negligently diagnosed or treated, and the mere fact that the victim happens to be a prisoner does not convert it into a constitutional violation. *Estelle*, 429 U.S. at 106.

The Court simply does not see a constitutional violation here because there is no evidence of deliberate indifference. Defendants did not disregard plaintiff's need for medical care, but instead gave him diagnostic X-rays, pain medication, and a substance to numb his arms and, thereby, eliminate his pain; transported him to various treatment centers and hospitals; and referred him to specialists, who treated his broken bones using various medical techniques and appliances. *Farmer*, 511 U.S. at 835-36 (concluding that, by taking reasonable measures to abate the harm, a defendant avoids liability, even if the harm is not averted). The fact that plaintiff reports that the treatment rendered by defendants left him with misshapen bones, a disability, and chronic pain is not a constitutional matter but is, if anything, a claim for medical negligence.

5

Insofar as plaintiff's claims that he was subjected to harsh treatment and comments on the part of various medical care providers, he has not described any adverse medical consequences which ensued from that treatment or those remarks. Though defendants's claimed remarks and behavior may be rude and unprofessional, they are not unconstitutional. *Ivey v. Wilson*, 832 F.2d 950, 954 (1987) ("Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment."). Defendants' caustic comments do not infringe on plaintiff's rights. "[H]arassment and verbal abuse ... do not constitute the type of infliction of pain that the Eighth Amendment prohibits." *Johnson v. Unknown Dellatifa* 357 F.3d 539, 546 (6th Cir. 2004).

Because there are no allegations of fact to establish deliberate indifference on the part of defendants, plaintiff fails to state a claim for a constitutional deprivation under the Eighth Amendment and he is not entitled to relief under § 1983.

**IV. Conclusion**

For the aforementioned reasons, none of plaintiff's allegations state a claim entitling him to relief under § 1983. 28 U.S.C. § 1915(e)(2); § 1915A. This lawsuit will accordingly be dismissed. Since the federal claims lack merit, the Court

6

will **DECLINE** to exercise supplemental jurisdiction over any state law claims for medical malpractice or negligence asserted in the complaint; *see United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966), and they will be **DISMISSED** without prejudice. 28 U. S. C. § 1367(c)(3).

A separate order will enter.

**ENTER**:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE
